UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ERICA P.,

               Plaintiff,              **DECISION AND ORDER**

       v.

                             1:23-CV-00169 EAW

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Erica P. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, (Dkt. 8; Dkt. 9), and Plaintiff's reply (Dkt. 10). For the reasons discussed below, the Commissioner's motion (Dkt. 9) is granted, and Plaintiff's motion (Dkt. 8) is denied.

**BACKGROUND**

Plaintiff protectively filed her applications for DIB and SSI on June 27, 2018.  (Dkt. 5 at 220-24, 225-30).[1]  In her applications, Plaintiff alleged disability beginning on January 1, 2017.  (*Id.* at 225).  Plaintiff's applications were initially denied on October 23, 2018.  (*Id.* at 83).  A telephone hearing was held before administrative law judge ("ALJ") John Noel on June 23, 2020.  (*Id.* at 45-82).  On August 5, 2020, the ALJ issued an unfavorable decision.  (*Id.* at 23-37).  Plaintiff requested Appeals Council review, her request was denied on December 17, 2020, and the ALJ's decision became the final decision.  (*Id.* at 8-13).  Plaintiff appealed to the United States District Court for the Western District of New York and the matter was remanded for further administrative proceedings.  (Dkt. 7 at 72-74).

A second hearing was held before ALJ Stephen Cordovani on September 29, 2022.  (Dkt. 6 at 871-917; Dkt. 7 at 1-6).  On November 29, 2022, the ALJ issued an unfavorable decision.  (Dkt. 6 at 827-42).  This action followed.

**LEGAL STANDARD**

I.    **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera*

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

*v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    **Disability Determination**

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not

have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

- 4 -

**DISCUSSION**

I.    **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520 and § 416.920.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since January 1, 2017, the alleged onset date.  (Dkt. 6 at 829).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: multiple sclerosis, alcohol abuse disorder, depressive disorder, anxiety disorder, post-traumatic stress disorder, and personality disorder.  (*Id.* at 830).  The ALJ further found that Plaintiff's medically determinable impairments of urinary urgency, vision problems, and migraines were non-severe.  (*Id.*).

At step three, the ALJ found that Plaintiff's impairments, including her substance use disorder, met the criteria of Listing 12.04.  (*Id.*).

The ALJ next found that if Plaintiff stopped her substance use, she would still have severe impairments.  (*Id.* at 834).  However, the ALJ concluded that if Plaintiff stopped substance use, she would not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.*).  The ALJ particularly considered the criteria of Listings 11.09, 12.04, 12.06, 12.08, and 12.15 in reaching his conclusion. (*Id.* at 834-35).

Before proceeding to step four, the ALJ determined that if Plaintiff stopped her substance use, she would retain the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following limitations:

> occasionally push and pull and operation of foot controls; frequently climb ramps and stairs; occasionally balance as that term is defined in the Selected Characteristics of Occupations; frequently crawl; never climb ladders, ropes, or scaffolds; frequent exposure to extreme humidity and wetness; frequent exposure to extreme cold; no exposure to high heat; moderate noise exposure; occasional driving; no work around hazards such as unprotected heights dangerous moving mechanical parts; can understand, remember, and carry out simple instructions and tasks; can maintain attention, concentration, and regular attendance for simple unskilled work; no supervisory duties, no independent decision-making, and no strict production quotas as with assembly line work; minimal changes in work routine and processes; occasional interaction with supervisors and co-workers; no or only incidental interaction with the general public; no unfamiliar travel or use of public transportation.

(*Id.* at 835-36). At step four, the ALJ found that if Plaintiff stopped the substance use, she was still unable to perform any past relevant work. (*Id.* at 840).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform if she stopped the substance use, including the representative occupations of document preparer, addressing clerk, and sorter. (*Id.* at 841). Accordingly, the ALJ found that, because substance use disorder was a contributing factor material to the determination of disability, Plaintiff was not disabled as defined in the Act. (*Id.*).

## II.    The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, to remand this matter to the Commissioner, arguing that the ALJ relied on an improper lay assessment of complex medical record evidence and failed to tether record support to his specific RFC and reasons

for rejecting the medical opinion evidence of record.  (Dkt. 8-1 at 13-21).  The Court has considered these arguments and, for the reasons discussed below, finds them without merit.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  Under the amendments to the Social Security regulations related to the evaluation of medical evidence for disability claims filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Instead, the ALJ "will articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all prior administrative medical findings" in claimant's record based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "[o]ther factors."  *Id.* §§ 404.1520c(c); 416.920c(c).  The source of the opinion is not the most important factor in evaluating its persuasive value.  *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2).  Rather, the most important factors in evaluating persuasiveness are supportability and consistency.  *Id.*

"Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions."  *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (internal citation omitted).  Specifically, the ALJ must explain how he considered the supportability and consistency factors, and

may, but is not required to, consider the three remaining factors.  20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).  Generally, the "supportability" factor "asks how well a medical source supported their opinion(s) with 'objective medical evidence' and 'supporting explanations,'" while "[t]he 'consistency' factor calls for a comparison between the medical source's opinion and 'evidence from other medical sources and nonmedical sources' in the file." *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *14-15 (S.D.N.Y. Jan. 29, 2021), *adopted*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022) (citing 20 C.F.R. §§ 404.1520c(c)(1), 404.1520c(c)(2)). Although the ALJ's failure to adequately explain how he considered the supportability and consistency of a medical opinion in the record constitutes procedural error, it does not always lead to a reversal of the ALJ's findings if "a searching review of the record assures [the court] 'that the substance of the [regulation] was not traversed.'" *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (internal citation and quotation marks omitted)).

Here, the ALJ evaluated several medical opinions contained in the record to arrive at Plaintiff's RFC.  (Dkt. 6 at 838-40).  He considered the assessments of the DDS physical consultants who limited Plaintiff to light work, with no concentrated exposure to hazards. The ALJ deemed these opinions to be unpersuasive, "as [Plaintiff's] multiple sclerosis medications do not support these findings, and her mildly unsteady gait with difficulty tandem walking . . . are inconsistent with the DDS restrictions."  (*Id.* at 838).

The ALJ also addressed the opinions of the DDS mental health consultants who opined that Plaintiff had mild limitations in understanding, remembering, and applying

information, interacting with others, and adapting or managing herself and a moderate limitation in concentration, persistence, or pace. The ALJ concluded that these opinions were partially persuasive, reasoning that "the moderate limitation is persuasive, as it is consistent with [Plaintiff's] testimony concerning ongoing focus issues, which her father also testified to, but ability to perform basic calculations and serial 7 subtractions . . . [h]owever, the remaining mild limitations are unpersuasive, as [Plaintiff's] struggles to deal with her supervisors at work and interact with the public . . . , as well as her ongoing panic attacks and difficulty using public transit . . ., are inconsistent with mild limitations." (*Id.*).

The ALJ discussed the opinion of Stephen Farmer, Psy.D., who opined that Plaintiff has moderate-to-marked levels of mental limitations. The ALJ found this opinion to be unpersuasive, "as it is inconsistent with [Plaintiff's] 2022 consultative evaluation post-sobriety, which as explained above, is rather unremarkable." (*Id.*). He also concluded that Plaintiff's testimony about her travel to conventions and concerts was inconsistent with this opinion. (*Id.*).

The ALJ addressed the opinion of Gilbert Jenouri, M.D., who concluded that Plaintiff had "minimal restrictions" for walking, standing long periods, bending, stair climbing, lifting, and carrying. In finding this opinion unpersuasive, the ALJ stated: "Dr. Jenouri's rather unremarkable examination may support his findings . . . , [but] this is merely a one-time snapshot of [Plaintiff's] symptoms and does not account for her

symptoms during multiple sclerosis flare-ups.  Treatment notes showing difficulty tandem walking and a mildly unsteady gait . . . are indeed inconsistent with this opinion." (*Id.*).

The ALJ considered the opinion of Tanya Geist, RPAC, who concluded that Plaintiff has significant and persistent disorganization of motor function, frequent attention/concentration interference from physical symptoms, can sit less than two hours, stand/walk less than two hours, lift up to 10 pounds occasionally, never twist, stoop, crouch, climb ladders, or climb stairs, never have exposure to extreme heat/cold, wetness/humidity, and hazards, and would be absent 2-3 days per month.  (*Id.* at 839).  The ALJ found Ms. Geist's opinion unpersuasive, "as [Plaintiff] 2022 consultative neurological evaluation is inconsistent with such findings, noting the claimant can change positions without assistance, has a normal gait with no assistive device, can walk on her toes but not heels, perform 3/4 of a full squat, has intact sensation apart from slight right shin numbness, intact reflexes, intact strength, and intact motor skills." (*Id.*).  The ALJ also found Plaintiff's ability to walk her dog two to three times per week and attend a Walking Dead convention and a concert to be inconsistent with Ms. Geist's opinion.  (*Id.*).  He also noted that Ms. Geist's "treatment notes showing mild gait instability and inability to tandem walk, but ability to heel and toe walk, with intact strength, reflexes, and coordination" did not support her opinion.  (*Id.*).

The ALJ also addressed the opinion of Plaintiff's therapist, Marissa Biondolillo, who opined that Plaintiff has a limited or seriously limited aptitude for unskilled work and inability to perform at a consistent pace; limited aptitudes for semi-skilled work apart from dealing with stress; and limited aptitudes for socially appropriate behavior,

neatness/cleanliness, and travel; and a seriously limited ability to use public transit, no ability to interact with the public, and absences more than four days per month. (*Id.*). The ALJ concluded that Ms. Biondolillo's opinion was unpersuasive, finding it "inconsistent with [Plaintiff'] unremarkable September 2022 psychiatric evaluation," and noted that the opinion was not supported by Ms. Biondolillo's treatment notes which reflect normal mood, speech, thought processes/content, and attention/concentration, with fair insight/judgment. (*Id.*).

The ALJ considered the opinion of Nikita Dave, M.D., who concluded that Plaintiff should avoid ladders and unprotected heights, and is capable of sedentary or light work, with rest breaks to avoid heat. (*Id.*). The ALJ found this opinion partially persuasive, concluding that "the limitations to sedentary or light work, without additional explanation, amount to an opinion relying solely on the agency's programmatic terms for exertional levels of work and are thus inherently neither valuable nor persuasive . . . [h]owever, the restrictions on avoiding ladders, unprotected heights, and heat are persuasive, as [Plaintiff's] intermittent multiple sclerosis flare-ups . . . support these limitations." (*Id.*). He also noted that Plaintiff's "inability to tandem walk and intact coordination with some mild finger-to-nose tremulousness noted . . . , as well as her testimony concerning overheating in 70-degree weather, are consistent with these restrictions." (*Id.*). He also found that Dr. Dave's conclusion that a cane was not medically necessary was also consistent with his opinions and the overall administrative record. (*Id.*).

Finally, the ALJ considered the opinion of Dennis Noia, Ph.D., who concluded that Plaintiff has no limitation for simple or complex directions/instructions, mild limitations

in interacting with others and sustaining concentration/pace, a mild-to-moderate limitation in sustaining a routine and work attendance, and a moderate-to-marked limitation in regulating emotions, behavior, and well-being.  (*Id.* at 839-40).  Dr. Noia also concluded that Plaintiff has mild limitations with respect to complex instructions and moderate limitations interacting with the public and supervisors.  The ALJ concluded that "Dr. Noia's statements appear to contradict each other with respect to social interaction and following instructions, and therefore are poorly supported . . . [and i]n addition, the lack of more significant restrictions concerning complex directions/instructions is unsupported by [Plaintiff's] complaints of ongoing panic attack and depressive symptoms."  (*Id.* at 840).  He also concluded that Dr. Noia's opinion as to a moderate-to-marked limitation "is inconsistent with [Plaintiff's] extended sobriety per her testimony and is unsupported by her intact insight/judgment on exam."  (*Id.*).

Plaintiff argues that the ALJ failed to support the RFC determination because he did not tether his findings to any specific medical evidence.  The Court disagrees.

As an initial matter, the ALJ properly articulated his consideration of the medical opinion evidence and did not merely rely on his own judgment or mere raw medical data in doing so.  To be sure, "[a]n ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion."  *Quinto v. Berryhill*, No. 3:17-CV-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted); *see also Soropoulos v. Comm'r of Soc. Sec.*, No. 22-CV-8688 (RWL), 2023 WL 8448211, at *9 (S.D.N.Y. Dec. 6, 2023) ("Put another way, ALJs may not, of course 'play doctor' by using their own lay opinions to fill evidentiary gaps in the record."

(quoting *Russ v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 164 (S.D.N.Y. 2022))).  And "an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted); *Arias v. Saul*, No. 18-CV-1296(KAM), 2020 WL 1989277, at *7 (E.D.N.Y. Apr. 25, 2020) ("The ALJ should have obtained a medical opinion from a qualified source, as her RFC could not stand if unsupported by at least one medical opinion.").

    As noted above, there is no requirement that an ALJ's RFC finding correspond to a single medical opinion.  *Matta*, 508 F. App'x at 56. At bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).

    While the ALJ may not rely on her own lay opinion in formulating the RFC, the fact that the RFC does not perfectly correspond to one medical opinion is not evidence that she has done so. *See Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("The fact that an RFC assessment does not correspond exactly

to a medical expert's opinion in the record does not mean that the RFC assessment is 'just made up.'"); *see also Soropoulos*, 2023 WL 8448211, at *9.  The ALJ is free to base his RFC findings on the portions of the various medical opinions that he found persuasive, along with the other evidence of record.

Here, it is readily apparent that the ALJ did not simply rely on his own lay opinion or raw medical data in making an RFC finding.  In formulating the RFC assessment, the ALJ considered the objective medical evidence and longitudinal record, Plaintiff's treatment history, activities of daily living, and multiple opinions of physicians, to support his conclusions.  Thus, contrary to Plaintiff's implication, this is not a case where the ALJ disregarded a well-supported medical opinion and fashioned an RFC from whole cloth.  Rather, his analysis comported with the required regulatory factors.

Moreover, it was appropriate for the ALJ to consider the clinical test results and objective findings to support his determination not to fully credit the medical opinions.  *See Michael M. v. Comm'r of Soc. Sec.*, No. 5:23-CV-752 (DNH/DJS), 2024 WL 4110740, at *3 (N.D.N.Y. Aug. 15, 2024) ("[T]he ALJ was entitled to rely on the lack of any evidence suggesting Plaintiff had a back impairment."), *report and recommendation adopted*, 2024 WL 4107688 (N.D.N.Y. Sept. 6, 2024); *Rosemond R. v. Comm'r of Soc. Sec.*, No. 1:22-CV-225-DB, 2024 WL 3361809, at *4 (W.D.N.Y. July 10, 2024) ("In addition to the opinion evidence, the ALJ properly considered Plaintiff's treatment history, including Plaintiff's unremarkable examination findings and other objective medical evidence of record, and reasonably determined that Plaintiff retained the RFC to perform sedentary work.").  Likewise, Plaintiff's reported activities of daily living were appropriately

assessed by the ALJ.  *See Daniel F. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00292 EAW, 2023 WL 6304722, at *7 (W.D.N.Y. Sept. 28, 2023) ("In addition, it is well-settled that an ALJ may consider the consistency of a claimant's activities of daily living with other evidence of record when evaluating credibility and determining the RFC.").

In short, and as explained above, the limitations included in the RFC are well-supported by the evidence, including the opinion evidence, in the record.  Plaintiff's arguments largely amount to a disagreement with the ALJ's weighing of the evidence, and it is not for the Court to reweigh the evidence, as it is the ALJ's duty to resolve conflicts among medical evidence in the record.  *See Smith v. Berryhill*, 740 F. App'x 721, 725 (2d Cir. 2018) ("The ALJ could have reached a different conclusion on the disputed medical record, but we defer to the ALJ's disability determination when it is supported by substantial evidence."); *Bryan F. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0055-DB, 2021 WL 1737760, at *5 (W.D.N.Y. May 3, 2021) ("[I]t is within the ALJ's discretion to resolve genuine conflicts in the evidence. . . .  In so doing, the ALJ may 'choose between properly submitted medical opinions.'" (citation and quotation omitted)).  Indeed, the ALJ's assignment of sedentary work reflects that he credited much of the same evidence Plaintiff emphasizes but any conflicts in the record were appropriately resolved by the ALJ, as he is tasked to do in crafting an RFC.  *See Donald A. v. Saul*, No. 1:19-CV-01146-MJR, 2021 WL 672043, at *6 (W.D.N.Y. Feb. 22, 2021) ("The presence of conflicting medical evidence is not uncommon, and it is the ALJ's duty to resolve those conflicts.").  Accordingly, remand is not required.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied. The Clerk of Court is directed to enter judgment in favor of Defendant and to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 22, 2025
       Rochester, New York

- 16 -